FILED
2017 Mar-06  PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

JULIE KAY WILBOURN,                )
                                   )
        Plaintiff,                 )
                                   )
    vs.                            )        Case No. 5:15-cv-01141-TMP
                                   )
CAROLYN W. COLVIN,                 )
Commissioner of Social Security,   )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION

## I.    Introduction

The plaintiff, Julie Kay Wilbourn, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Wilbourn timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Accordingly, the court issues the following memorandum opinion.

Ms. Wilbourn was 44 years old on the date of the ALJ's opinion. (Tr. at 43). Her past work experiences include employment as an administrative clerk, data entry clerk, and nursery school attendant. (Tr. at 43). Ms. Wilbourn claims that she became disabled on March 21, 2011, due to joint disease and pain of the lower back, severe bilateral leg pain, Bipolar disorder, depression, anxiety, and panic attacks. (Tr. at 35, 202).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id*. If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step

three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that

burden is met, the claimant must prove her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Wilbourn meets the nondisability requirements for a period of disability and DIB and was insured through December 31, 2017. (Tr. at 37). She further determined that Ms. Wilbourn has not engaged in substantial gainful activity since the alleged onset of her disability. *Id.* According to the ALJ, the plaintiff has the following impairments that are considered "severe" based on the requirements set forth in the regulations: unspecified arthopathies, bipolar disorder, and substance addiction disorders. *Id.* However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 38). The ALJ did not find Ms. Wilbourn's allegations concerning pain to be entirely credible, and she determined that Ms. Wilbourn has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to occasional postural maneuvers but no climbing of ladders, ropes, or scaffolds. She would need to avoid concentrated hot or cold temperature[] extremes, extreme wetness or humidity. She would need to avoid dangerous moving unguarded machinery or unprotected heights. She can understand, remember, and carry out simple instructions. She can concentrate and remain on task for two hours at

a time sufficient to complete an eight-hour workday. She would be limited to jobs involving infrequent and well-explained workplace changes. She would be limited to casual non-intense interaction with the general public.

In the alternative claimant has the same residual functional capacity with the additional limitations: She must be afforded the option to sit or stand during the workday for one or two minutes every hour or so (if standing can sit for one or two minutes and if sitting can stand for one or two minutes just to change position). She must [be] allowed or afforded brief access to a restroom every 2 to 2½ hours during the workday, could be performed wearing an incontinence pad.

(Tr. at 41, 39-40).

According to the ALJ, Ms. Wilbourn is unable to perform any of her past relevant work, she is a "younger individual," and she has a "at least a high school education," as those terms are defined by the regulations. (Tr. at 43). She determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not she has transferable job skills." (*Id.*) The ALJ found that Ms. Wilbourn has the residual functional capacity to perform a significant range of light work. (Tr. at 44). Even though the plaintiff cannot perform the full range of light work, the ALJ determined that there are a significant number of jobs in the national economy that she is capable of performing, such as marker, router, and cleaner, under the original residual

functional capacity, or marker, router, or document preparer under the alternative residual functional capacity. *Id.* The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 21, 2011, through the date of this decision." (*Id.*)

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar.*

*Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm the ALJ's decision if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.   No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."   20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."   *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   Thus, even if the court were to

disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

The plaintiff argues that the ALJ made several errors in her determination. The plaintiff contends that that ALJ erroneously gave significant weight to the opinion of state agency psychiatric consultant, Samuel D. Williams, while improperly rejecting the opinion of the plaintiff's treating psychiatrist, Dr. Sharp. The plaintiff asserts that the ALJ's alternative RFC determination that the plaintiff could perform work wearing an incontinence pad is inappropriate speculation and not based on any substantial medical evidence.   She claims that the ALJ's determination that the plaintiff has a history of drug seeking and substance abuse is not supported by substantial evidence.   Finally, the plaintiff argues that the ALJ improperly applied 42 U.S.C. § 423(d)(5)(A).

### A. Opinion of Non-Examining Physician

The plaintiff contends that it was improper for the ALJ to adopt the opinion of state agency psychiatric consultant, Samuel D. Williams, M.D. ("Williams") because he is not an "acceptable medical source" capable of giving a medical opinion because Williams' medical license status includes a retirement waiver that

prohibits him from engaging in the practice of medicine.  According to the plaintiff, because Williams' license is not a license to actively engage in the practice of medicine, he cannot be considered an acceptable medical source.

The Code of Federal Regulations defines an "acceptable medical source" as (1) licensed physicians or (2) licensed or certified psychologists, among other licensed professionals.  20 C.F.R. § 404.1513(a).  The definition in the CFR does not indicate that a license with a retirement waiver or any similar limitation is somehow invalid.  The plaintiff seems to equate the retirement waiver to a revoked or suspended licenses, which is addressed in 20 C.F.R. §404.1503a.   Section 404.1503a makes clear that "[w]e will not use in our program any individual or entity, except to provide existing medical evidence, who is currently excluded, suspended, or otherwise barred from participation in the Medicare or Medicaid programs, or any other Federal or Federally-assisted program; whose license to provide health care services is currently revoked or suspended by any State licensing authority pursuant to adequate due process procedures for reasons bearing on professional competence, professional conduct, or financial integrity. . ."  Because Williams is not required to maintain continuing education under his retirement-waiver license, the plaintiff argues that he is not professionally competent.

The plaintiff's reading of § 404.1503a is, frankly, a stretch.   The requirements for the retirement waiver license are addressed in Alabama Administrative Rule 540-X-14.04, which notes that a retired physician may be excused from continuing medical education requirements by submitting a written statement that she or he is "retired and is no longer practicing medicine in any form."   Clearly, such a decision is in the hands of the physician.   This is not the same situation as having a license revoked or suspended by some wrongdoing.   There is no evidence that Williams had his license suspended or revoked or is in any way precluded from being a medical source opinion under § 404.1503a.   Furthermore, Williams still is a licensed physician.   The fact that he is non-practicing by choice does not place him outside the definition of "licensed physician."   Therefore, the plaintiff's argument regarding Williams' license is without merit, and Williams is an acceptable medical source under § 404.1513.

## B. Treating Physician's Opinion

The plaintiff contends that the ALJ improperly rejected the opinion of her treating psychiatrist, Hugh Sharp, M.D. ("Sharp").   (Doc. 11, p. 19).   A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary."   *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d

1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of

disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

To the extent the plaintiff argues that the ALJ's decision to discredit Sharp's opinion in favor of Williams' is improper due to Williams' license status, the argument is without merit, as set out above.  The plaintiff also argues that the ALJ improperly credited the opinion of consultative psychological examiner, William McDonald, Ph.D., rather than the opinion of treating physician Sharp.  The ALJ addressed Sharp's opinion as follows:

> The undersigned discounts the physical and mental limitations assessed by Dr. Awoniyi and Dr. Sharp in a [sic] medical source statements of December 2013 (Exhibits 18F and 19F). . . .
>
> The residual functional capacity allows for some limitations resulting from the claimant's alleged pain and dysfunction as well as for mental limitations.  The undersigned discounts the multiple "marked" limitations assessed by Dr. Sharp (Exhibit 19F), especially in light of the assessment of Dr. McDonald (Exhibit 9F).  He found that the claimant had only mild limitations in the ability to handle instructions and moderate limitations in the ability respond to co-workers and work

pressure.  Dr. McDonald noted that the claimant's symptoms "should continue to improve with" appropriate treatment.  He found that she was friendly and talkative, with normal speech in content, form, and progression.

(Tr. at 42-43).   In this case, Dr. Sharp provided a medical source opinion concerning the plaintiff's mental state on December 4, 2013, in which he expressed the opinion that she has "marked" limitations in several areas, including responding appropriately to supervisors, co-workers, and customers; responding to customary work pressures; maintaining appropriate concentration for at least two hours; using judgment for complex work tasks; and several others.  Dr. Sharp regularly treated the plaintiff from late 2011 through the date of the medical source opinion, seeing her almost monthly during 2013.  In his progress notes, Dr. Sharp recorded that her anger, depression, and anxiety, while somewhat variable, increased at times to the point that she did not drive or leave the house.  She also had an angry confrontation with her sister, leading to law enforcement intervention in April 2013.   In contrast, Dr. McDonald met with the plaintiff only once, on March 25, 2013, at which time he found her to have only mild to moderate limitations.

The testimony of a treating physician is entitled to substantial weight unless good cause is shown not to give the opinion substantial weight.   Good cause

includes situations in which the treating physician's opinion is not supported by the record or his own findings or the evidence supports a different finding. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).   Although the *Phillips* examples are not presumed to be exhaustive, the list does not support the idea that a treating physician's opinion may be discredited due solely to the ALJ's determination that the opinion of a consultative psychological examiner was somehow better.   The ALJ did not explain what support in the record she found bolstering McDonald's opinion rather than Sharp's.   She also did not address any discrepancies or inconsistencies in Sharp's records that would render his opinion not entitled to substantial weight.   Although it is within the purview of the ALJ to determine that the treating physician's opinion is not entitled to great weight, she must support that finding with a showing of "good cause."   "In determining whether a claimant is disabled, '[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.'"   Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 873 (11th Cir. 2011), quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997).   In the instant case, the ALJ failed to do so and, therefore, her finding as to Sharp's opinion is not supported by substantial evidence.

The ALJ also adopted the findings of non-examining psychological consultant, Dr. Williams.  While Dr. Williams's license status creates no basis for rejecting his assessment, the ALJ also has failed to explain why his assessment of mild to moderate limitations should be adopted over the marked limitations opined by the treating physician, Dr. Sharp.   A reading of Dr. Williams's assessment makes clear that it simply tracks Dr. McDonald's assessment.  "The opinion of a non-examining physician is… entitled to little weight when it contradicts the opinion of an examining physician."   Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 873 (11th Cir. 2011), citing Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir.1988). The ALJ's failure to explain why she adopted Dr. Williams's consultative assessment over those of Dr. Sharp, the claimant's treat physician for more than two years is reversible error.

## C. Improper Speculation by the ALJ

The plaintiff argues that the ALJ's determination in her alternative RFC that the plaintiff could perform work wearing an incontinence pad is improper speculation not supported by substantial evidence.  (Tr. at 40).  The plaintiff asserts that she suffers from ischemic enteritis and had surgery to remove and resection part of her small bowel.  (Doc. 11, p. 31).  The plaintiff was suspected to have "short gut syndrome" due to the surgery, which resulted in "noninfectious

diarrhea NOS." *Id.* at 32. The ALJ did not discuss the plaintiff's short gut syndrome or other abdominal ailments when determining the plaintiff's severe or non-severe impairments.

However, the ALJ found the plaintiff's abdominal problems to be severe enough to warrant discussion in her RFC determination. Step two of the evaluation process requires the ALJ to consider the effect of *all* of the plaintiff's physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (emphasis added). By failing to address the plaintiff's abdominal issues at step two, the ALJ's determination at step three, that that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment cannot be supported by substantial evidence. Therefore, the claim is due to be remanded to allow the ALJ to specify whether the plaintiff's abdominal problems constitute a severe or non-severe impairment, and whether, in combination with the plaintiff's other impairments, her limitations due to her abdominal impairments causes the plaintiff to meet or medically equal a listing.

### D. The ALJ's finding of a History of Drug Abuse and Drug Seeking

The plaintiff claims that the ALJ's determination that the plaintiff has a history of substance abuse and drug seeking is not supported by substantial evidence.  The ALJ stated in her RFC determination:

> The claimant also has a history of substance abuse/drug seeking (Exhibit 4F).  In June 2010, a treating psychiatrist, Dr. Roark, stated that "hospitalization for medical detox is considered" but that the claimant rejected it.  A tapering schedule off narcotics was discussed and the claimant agreed to try this approach.  Treatment notes from Rehabilitation and Neurological Services of March 2013 show that the claimant reported that her medications were not called in after her last visit and she requested only to see physicians from then on (Exhibits 5F).

(Tr. at 42).

Dr. Roark initially evaluated the plaintiff on April 2, 2008.  (Tr. at 343).  At her initial evaluation, the plaintiff listed her current medications as lamictal, Seroquel, levoxyl, and vitamins, but no narcotic pain medication.  *Id.*  On January 13, 2010, the plaintiff was taking abilify, lamictal, lithobid, topamax, analgesic cream, klonapin, and Lortab.  (Tr. at 347).  Lortab is an opioid pain medication.  Klonopin is a benzodiazepine medication.  The plaintiff was reporting extreme sedation in the evening along with cognitive slowing and difficulty retrieving information from memory.  *Id.*  The plaintiff reported taking a pain pill every five

hours. *Id*. On January 27, 2010, the plaintiff reported taking abilify, lamictal, lithobid, and klonapin, but not Lortab or topamax. (Tr. at 348). On February 17, 2010, the plaintiff noted a decreased use of opiates (two per day), and reported improved back pain. (Tr. at 349).

On March 17, 2010, the plaintiff reported "unendurable pain" and stated that she had increased her Lortab to as many as 6 per day. (Tr. at 350). Roark noted, however, that the plaintiff was "[c]ompliant on medications." *Id*. The plaintiff's medication status was reported as unchanged on March 31, 2010. (Tr. at 365). On April 14, 2010, the plaintiff reported taking 8 pain pills a day on the day following a steroid injection. (Tr. at 352). Dr. Roark noted that the plaintiff's medication levels would need to be assessed in one month. *Id*. On May 26, 2010, the plaintiff's notes indicated that she was planning to taper her abilify, which is an antipsychotic medication, not an opiate or benzodiazepine. (Tr. at 353). On June 9, 2010, the plaintiff increased her klonapin the week prior without medical direction to do so. (Tr. at 354). She also reported having taken 8 Lortab the day before. *Id*. The plaintiff agreed to attempt a "tapering schedule off narcotics." (Tr. at 354). Roark noted that the plaintiff was dealing with "[o]piate abuse secondary to chronic pain." (Tr. at 355). On June 17, 2010, the plaintiff's records

note that she suffers from chronic pain but was "in transition to pain management off opiates." (Tr. at 356).

The plaintiff returned to Roark on July 28, 2010. (Tr. at 357). She still was taking Lortab, but her "tapering" plan was not discussed. *Id.* On August 5, 2010, the plaintiff reported that she was "determined" to detox off opiates, and was directed to coordinate tapering off with her primary care physician. (Tr. at 358). On September 1, 2010, the plaintiff reported that she took her last Lortab two weeks prior. (Tr. at 360). The plaintiff sought out-patient treatment for detox off Lortab, but was told she would have to undergo inpatient treatment due to past suicidal ideations. *Id.* The plaintiff did not undergo inpatient treatment. *Id.* She reported withdrawal symptoms including tremor, insomnia, sweating, goose flesh, muscle aches, temperature irregularity, gastrointestinal symptoms. *Id.* The plaintiff was attempting to detox herself without medical help. *Id.* On September 8, the plaintiff stated her last Lortab was taken eight days prior to the appointment. (Tr. at 362). Dr. Roark noted the inconsistency between this report and the report given by the plaintiff on September 1, however the discrepancy was not clarified. *Id.*

The plaintiff visited Dr. Roark again on October 26, 2010, reporting that she had emergency surgery on October 1 to remove a portion of her bowel. (Tr. at

363).  She stated that she planned to return to work the following week.  *Id*.  Her use of Lortab or other opiate medication was not discussed.  On December 7, 2010, the plaintiff reported that she resumed taking Lortab under medical direction, despite her fear of abuse or dependence.  (Tr. at 365).  The plaintiff's medication was reported as unchanged on February 17, 2011.  (Tr. at 366).

Although it is less clear whether the plaintiff's behavior constitutes drug seeking, as Dr. Roark was not the prescriber of the various narcotics taken by the plaintiff, the ALJ's determination that the plaintiff has a history of substance abuse is supported by substantial evidence.  Roark's records indicate that the plaintiff took Lortab and klonopin at varying rates during her treatment.  The plaintiff further admits having concern about abuse and dependence when she resumed taking Lortab after her abdominal surgery.  The ALJ's determination regarding the plaintiff's substance abuse is supported by substantial evidence.

### E. Application of 42 U.S.C. § 423(d)(5)(A)

The evaluation of subjective complaints of pain is discussed in 42 U.S.C. § 423(d)(5)(A), which states, in pertinent part:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.  An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical

signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques . . . must be considered in reaching a conclusion as to whether the individual is under a disability. . .

The Eleventh Circuit established a standard to direct ALJ's in evaluating claimant's subjective allegations of disabling pain.  Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v.*

*Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.*

The ALJ determined that the plaintiff met the first step of the pain standard, that the plaintiff provided evidence of an underlying medical condition. *See Dyer*, 395 at 1210. Moreover the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms;

however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 41). The ALJ elaborated:

> The medical records fail to document a sufficient objective basis to accept the claimant's allegations resulting in functional limitations as wholly credible, in accordance with Social Security Rulings 96-4p and 96-7p. The undersigned has reviewed the claimant's subjective complaints in accordance with the guidelines provided by Social Security Ruling 96-7p and regulations 20 C.F.R. § 404.1529.
>
> Medical evidence shows the claimant has some underlying medical conditions, but it does not support her allegations of severe and chronic limitation of function to the degree that it would preclude the performance of all substantial gainful activity. The claimant is not credible in the least, and the medically determinable impairments of record do not reasonably support her allegations. All physical examinations have been completely normal (Exhibit 5F). Magnetic resonance imagining of the thoracic spine revealed no significant abnormality, and magnetic resonance imaging of the lumbar spine showed no significant focal finding (Exhibit 1F).
>
> In addition, although the claimant's doctor issues a referral for a functional capacity evaluation, this was never scheduled or completed (Exhibit 17F). Although the representative submitted a medical source statement from Dr. Awoniyi (18F), his office stated that it cannot do a functional capacity evaluation and issued a prescription for an independent evaluation (Exhibit 17F, page 2). The representative stated that one has not been done, and none has been scheduled.
>
> The claimant's alleged limitations and symptoms have increased without demonstrable worsening of the objective medical findings. Although the claimant testified that she cannot walk without a cane, this has not been prescribed by a physician. No medical evidence of

record supports her allegations that she cannot stand without a cane and can lift only "3 to 5 pounds max."

The claimant also has a history of substance abuse/drug seeking (Exhibit 4F). In June 2010, a treating psychiatrist, Dr. Roark, stated that "hospitalization for medical detox is considered" but that the claimant rejected it. A tapering schedule off narcotics was discussed and the claimant agreed to try this approach. Treatment notes from the Rehabilitation and Neurological Services of March 2013 show that the claimant reported that her medications were not called in after her last visit and that she requested only to see physicians from then on (Exhibit 5F).

The record shows signs of exaggeration on examination (e.g. give-way weakness; pain adjudged by examiner to exceed findings). A consultative medical examiner, Sherry A. Lewis, M.D., found that the claimant was "positive for "tenderness" (1 -2+/4+) at the level of T9 to T12, and L3 to S1" (Exhibit 8F). Dr. Lewis noted that the claimant "responded 'ouch' whether it was my glove finger, the empty sleeve of the examination glove or the soft, cloth tie from her examination gown. Needless to say the tie from the examination gown, and the empty sleeve of the nitrile glove conveyed minimal force to the skin, and none to the deeper structures such as the muscles, or bones" (Exhibit 8F).

In addition, the claimant's pain is non-anatomic or non-organic, with the Mayo Clinic finding no objective reasons for the pain (Exhibit 3F), and the claimant's alleged severe pain has not resulted in atrophy. Magnetic resonance imaging of the lumbar spine showed "very minimal disc desiccation at L4-L5 without focal disc herniation" (Exhibit 11F, page 83). Dr. Lewis found that the claimant "has no trigger points" (Exhibit 8F).

(Tr. at 41-42).

The ALJ found that the plaintiff failed to show either objective medical evidence that confirms the severity of the pain or that the medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id.* The ALJ explained that the plaintiff's subjective testimony of pain was inconsistent with the medical record.  As set out above, the ALJ cites both the medical record as well as the plaintiff's own testimony to support her determination that the plaintiff's subjective pain testimony is not credible.   The determination of credibility is left to the ALJ and the ALJ is entitled to discredit the plaintiff's credibility so long as she articulates explicit and adequate reasons for doing so. Here, the ALJ did so.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Wilbourn's arguments, the Court finds the Commissioner's decision is not fully supported by substantial evidence.  It is due to be remanded to the ALJ for further consideration of the medical source opinion and records of Dr. Sharp, as well as the evidence of the claimant's abdominal problems.  A separate order will be entered.

DONE this 6th day of March, 2017.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE